UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NOS. 06-21180-CIV-MARTINEZ/BANDSTRA
06-21181-CIV-MARTINEZ/BANDSTRA
(04-20337-CR-MARTINEZ)

CARLOS BENHAMU,

    Petitioner,

vs.

UNITED STATES OF AMERICA,

    Respondent.
_____/



## REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court on (1) Petitioner Carlos Benhamu's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (Case No. 06-21181 (D.E. 1)) filed on May 9, 2006; and (2) Petitioner Carlos Benhamu's Petition for Writ of Habeas Corpus Pursuant to 28 U.S. C. § 2241 (Case No. 06-21180 (D.E. 1)) also filed on May 9, 2006.[1] On May 11 and July 10, 2006, these motions were referred to the undersigned by the Honorable Jose E. Martinez for a report and recommendation pursuant to 28 U.S.C. §636(b). Having carefully considered these motions, the government's response thereto, the underlying criminal court file and applicable law, the undersigned respectfully recommends:

    (1) that Petitioner's Request for Relief Pursuant to 28 U.S.C. § 1361 be DENIED;

    (2) that Petitioner's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct

---

[1] As an alternative remedy, petitioner seeks a writ of mandamus under 28 U.S.C. § 1361.

Sentence be DENIED; and

(3) that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be DISMISSED without prejudice to afford petitioner the opportunity to exhaust his administration remedies in accordance with BOP procedures.

## BACKGROUND

On May 28, 2004, Carlos Benhamu ("petitioner") was charged by information in this district with two counts of bank fraud in violation of 18 U.S.C. §§ 1344 and 2. These charges arose out of petitioner's submission of false documents in connection with obtaining a monetary loan from a federally insured financial institution. Specifically, petitioner was the founder and owner of B & B Group, Inc., a Miami based company that marketed and sold cellular telephones in Latin America. The information alleged that in October 1998, B & B entered into a Loan and Security Agreement with HSBC Business Loans, Inc., an affiliate of HSBC Bank, a federally insured financial institution, whereby HSBC offered B & B a revolving line of credit provided that B & B complied with certain conditions including the posting of sufficient collateral in the form of, among other things, accounts receivable. Petitioner signed the agreement on behalf of B & B. In signing the agreement, petitioner represented that the accounts receivable would be genuine and bona fide.

Notwithstanding this agreement, B & B submitted documents for fictitious accounts receivable, purportedly owed by customers in Brazil. Relying on these false documents, HSBC advanced funds to B & B. Eventually, HSBC noticed the irregularities in the accounts receivable submitted by B & B. Petitioner admitted, first to HSBC and then to agents from the Federal Bureau of Investigation, that he knowingly submitted the fictitious

accounts receivable. Petitioner and HSBC entered into a settlement agreement that concluded HSBC's civil litigation against B & B. Thereafter, petitioner was charged by information with two counts of bank fraud.

On August 31, 2004, petitioner entered a plea of guilty to both counts of the information. On April 22, 2005, petitioner was sentenced to a term of 24 months imprisonment to be followed by a five year term of supervised release. The judgment reflects that the Court made the following recommendations to the Bureau of Prisons:

> That 12 months of defendant's time be spent in a halfway house, and also that he be incarcerated in a facility closest to S. Florida that is commensurate with his background and the offense.

See Judgment of Conviction, Petitioner's Exhibit A. Consistent therewith, the Court stated at the plea colloquy "I will recommend to the Bureau of Prisons that 12 months of the time be spent . . . at a halfway house, but it is not within my control to order that." See Petitioners's Exhibit D.

Thereafter, petitioner filed a direct appeal to the Eleventh Circuit Court of Appeals challenging the amount of monetary loss used to calculate the applicable sentencing guideline range. Petitioner's sentence was affirmed by the Eleventh Circuit in a written opinion issued on December 23, 2005. Mandate was issued on January 23, 2006. See United States v. Benhamu, 2005 WL 3501840 (11th 2005).

On June 17, 2005, petitioner surrendered to the Bureau of Prisons ("BOP") at his designated facility, the Federal Correctional Institute ("FCI") in Miami, Florida. On February 8, 2006, petitioner was advised by the Warden at FCI that he would only be eligible for placement in a halfway house or community corrections center ("CCC") for the last ten percent of his sentence.

3

On May 9, 2006, petitioner filed the instant motion to vacate, set aside, or vacate his sentence pursuant to 28 U.S.C. §2255, challenging the BOP regulations that limit a prisoner's placement in a community confinement facility to the lesser of ten percent of the prisoner's total sentence or six months. See Case No. 06-21181-CIV-MARTINEZ. On that same date, petitioner also filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 raising the identical claim and filing the identical memorandum of law in support thereof. See Case No. 06-21180-CIV-MARTINEZ. In essence, petitioner seeks an order invalidating the applicable regulations so that he would be eligible to serve the remainder of his sentence in a CCC consistent with the trial court's recommendation.

The government opposes petitioner's claim on both procedural and substantive grounds. Procedurally, the government argues that petitioner failed to file a separate petition seeking a writ of mandamus pursuant to 28 U.S.C. § 1361 so that no further consideration of this relief is necessary. The government further contends that petitioner's claim is not a challenge to the lawfulness of his sentence, but rather a challenge to the execution of his sentence and, thus, can only be raised in a § 2241 petition as opposed to a § 2255 petition. In addition, the government argues that petitioner has failed to exhaust his administrative remedies so that his claim is not ripe for review by this Court. Substantively, the government contends that the BOP regulations are lawful and appropriate and, thus, petitioner's claim should be denied on the merits.

## FINDINGS AND CONCLUSIONS

A. Petitioner's Claim Pursuant to 28 U.S.C. § 1361

Petitioner characterizes this matter as a petitioner for writ of habeas relief under §§2241 and 2255 and as a writ of mandamus under 28 U.S.C. § 1361. First, the Court

finds that petitioner is not entitled to the issuance of a writ of mandamus under 28 U.S.C. §1361 directing the BOP to exercise it statutory discretion under 18 U.S.C. § 3621[2], which would allow consideration of the sentencing court's twelve month recommendation. In order to be eligible for mandamus relief, a petitioner must establish (1) that he has a clear right to the sought relief; (2) that the respondent's duty to perform the act in question is clearly defined; and (3) that he has no other adequate remedy available. See <u>District Lodge No. 166, Intern. Ass'n of Machinists and Aerospace Workers v. TWA Services, Inc., et al.</u>, 731 F.2d 711 (11th Cir. 1984). Petitioner has not established any of these requirements nor even attempted to adequately brief these issues. Significantly, the undersigned notes that respondent's duty is clearly discretionary. Moreover, as discussed *infra*, petitioner has an adequate remedy available via a petition for habeas relief under § 2241.

Accordingly, the undersigned recommends that petitioner's request for relief pursuant to 28 U.S.C. §1361 be denied.

B. <u>Petitioner's Claim Pursuant to 28 U.S.C. § 2255</u>

As noted above, petitioner's § 2255 claim challenges the BOP regulations that limit a prisoner's placement in a community confinement facility to the lesser of ten percent of the prisoner's total sentence or six months. Stated otherwise, petitioner's claim essentially challenges the place of his imprisonment, including the conditions and degree of physical restrictions that differentiate a CCC from a BOP penal facility. Thus, petitioner's claim is not an attack on the imposition of his sentence but rather an attack on the execution of that

---

[2]This statute provides the framework for authorizing the BOP to designate inmates to various penal and correctional facilities.

sentence. See Jiminian v. Nash, 245 F.3d 144, 146 (2d Cir. 1984) (the execution of a sentence includes matters such as "the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, **prison transfers**, type of detention and prison conditions") (emphasis added).

Collateral attacks to correct the imposition of a federal sentence are properly filed pursuant to § 2255, while actions filed pursuant to §2241 are appropriate for challenges to the BOP's execution of a defendant's sentence. See Adams v. United States, 372 F.3d 132, 134-35 (2d Cir. 2004); see also Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991) ("challenges to the length, appropriateness or conditions of confinement are properly brought under 28 U.S.C. § 2241"). Indeed, §2241 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody. See Zucker v. Menifee, 2004 WL 102779 (S.D.N.Y. 2004).

Accordingly, the undersigned recommends that petitioner's motion under 28 U.S.C. §2255 to vacate, set aside, or correct sentence be DENIED and that petitioner's claim be construed solely as a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

C. Petitioner's Claim Pursuant to 28 U.S.C. §2241

1. Failure to Exhaust Administrative Remedies

Respondent concedes that the proper jurisdictional basis for petitioner's claim is 28 U.S.C. § 2241. However, respondent argues that this Court lacks jurisdiction to hear petitioner's claim at this juncture due to his failure to exhaust administrative remedies. In support, respondent notes that it is well settled law in the Eleventh Circuit that a federal habeas corpus petitioner must exhaust administrative remedies before seeking habeas corpus relief pursuant to 28 U.S.C. § 2241. See Gonzalez v. United States, 959 F.2d 211,

212 (11th Cir. 1992). Indeed, the exhaustion requirement in § 2241 cases is jurisdictional. See Skinner v. Wiley, 355 F.3d 1293, 1295 (11th Cir. 2004). Petitioner concedes that he did not fully exhaust his administrative remedies, but argues that resort to administrative remedies would be futile given the duration of his sentence. In petitioner' view, the subject issue may be moot by the time the administrative process is completed.[3]

Addressing the exhaustion requirement, the undersigned first notes that the Attorney General has promulgated regulations that establish an administrative procedure "to allow an inmate to seek formal review of an issue relating to any aspect of his or her confinement." See 28 C.F.R. § 542.10(a). The procedures require that the inmate first seek an informal resolution from staff within the institution and then seek administrative review from the warden. See 28 C.F.R. § 542.13(a). If the inmate is not satisfied with the warden's response, he may appeal the decision to the regional director, followed by a further review by the General Counsel. See 28 U.S.C. § 542.15(a). "An inmate has not fully exhausted his administrative remedies until he has appealed through all three levels." Irwin v. Hawk, 40 F.3d 347, 349 n.2 (11th Cir. 1994).

As discussed above, the exhaustion requirement in §2241 cases is jurisdictional and, thus, "whether [petitioner] may even assert a futility exception to the requirement is questionable." Jaimes v. United States, 168 Fed. Appx. 356, 359 (11th Cir. 2006). Indeed, the Eleventh Circuit has held unequivocally that "[i]f, and only if, the [petitioner] has

---

[3] The record reflects that petitioner filed requests with his case manager, the case coordinator and the warden for placement in a CCC for a period of twelve months. These requests were denied in accordance with 18 U.S.C. § 3624(c) and petitioner was advised that he would not be eligible for CCC placement until January 10, 2007.

pursued his administrative remedy may he seek relief in the district court." United States v. Herrera, 931 F.2d 761, 764 (11th Cir. 1991). Regardless, those courts which apply a futility exception do so in only "extraordinary circumstances," and require the petitioner to "bear the burden of demonstrating the futility of the administrative review." Fuller v. Rich, 11 F.3d 61, 62 (5th Cir. 1994).

In this case, it is undisputed that petitioner has failed to exhaust the administrative remedies available to him. Although petitioner essentially contends that administrative procedures may be prolonged to the point of rendering the instant petition moot, he has failed to explain why administrative review to the Regional Director or, if needed, further review to the General Counsel would prove futile if conducted in a timely manner. Indeed, the urgency of a petitioner's claim is not grounds to "vitiate the requirement that he exhaust his administrative remedies." Gonzalez v. Perrill, 919 F.2d 1, 2 (2nd Cir. 1990), *overruled on other grounds,* United States v. Edwards, 960 F.2d 278 (2nd Cir. 1992). Thus, the fact that petitioner may be eligible for release to a CCC (if his claim proves successful) before he concludes the administrative process is insufficient to excuse the exhaustion of administrative remedies requirement. See Lowery v. Barron, 2006 WL 1529498 (N.D. Fla. 2006)

The undersigned further finds that petitioner has failed to demonstrate that this case involves extraordinary circumstances. Petitioner's belief that the BOP is unlikely to invalidate its own regulations does not rise to the level of an "extraordinary circumstance" sufficient to waive the exhaustion requirement. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) ("[T]he exhaustion requirement cannot be waived based upon the petitioner's belief that pursuing administrative procedures would be futile.").

In short, the undersigned finds that petitioner has not demonstrated that he has exhausted his administrative remedies by pursuing his appellate rights within the BOP before proceeding in this federal court. Thus, this Court lacks jurisdiction to entertain the merits of petitioner's claim. See Lowery v. Barron, supra, (citing Braxton v. Bauknecht, Case No. 3:05cv126/MCR/MD (dismissing for lack of jurisdiction §2241 petitioner challenging BOP's interpretation of 18 U.S.C. § 3624(b) where petitioner failed to exhaust administrative remedies).[4]

Accordingly, the undersigned recommends that petitioner's § 2241 petition for writ of habeas corpus be dismissed to afford petitioner the opportunity to fully exhaust his administrative remedies in accordance with BOP procedures.

2. Petitioner's Challenges to the BOP's Placement Policy

Assuming *arguendo,* that the undersigned excused petitioner's failure to exhaust on futility grounds, the undersigned would find petitioner's habeas corpus petition to be meritorious . Petitioner challenges the federal regulations governing the BOP's policy of limiting CCC placement to the last six months or last ten percent of the inmate's sentence, whichever is less, and seeks placement in a CCC in accordance with the sentencing court's recommendation. Essentially, petitioner claims that the regulations are invalid and in conflict with governing statutory provisions so that the decision regarding petitioner's designation should be made without regarded to these regulations.

---

[4]In so concluding, the undersigned has considered and rejected decisions from outside this district which have found futility to exist where a petitioner is challenging a regulation's validity as opposed to its application. See, e.g., Woodall v. Fed. BOP, 432 F.3d 235, 239 n.2 (3rd Cir. 2005), finding that this argument was not raised herein and binding Eleventh Circuit authority holds to the contrary.

The BOP regulations at issue are based on the following two statutes. Title 18 U.S.C. §3621(b), which grants the BOP discretion to designate a prisoner's place of incarceration, specifically provides that "[t]he Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability". Id. In addition, at any time the BOP "may direct the transfer of an inmate from one penal or correctional facility to another." Id. In making the initial placement designation and any transfer decisions, the BOP considers the following five factors:

(1) the resources of the facility contemplated;

(2) the nature and circumstances of the offense;

(3) the history and characteristics of the prisoner;

(4) any statement by the court that imposed the sentence--

(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

(B) recommending a type of penal or correctional facility as appropriate; and

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28. Id.

The second relevant statute is 18 U.S.C. § 3624( c), which directs the BOP to prepare prisoners for re-entry into the community near the end of their sentences. This statute provides, in relevant part, as follows:

The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under the conditions that will afford the prisoner a reasonable opportunity to adjust to

10

and prepare for the prisoner's re-entry into the community. The authority provided by this subsection may be used to place a prisoner in home confinement.

18 U.S.C. § 3624( c).

On March 25, 1992, the Department of Justice's Office of Legal Counsel ("OLC") issued an opinion that interpreted §3621(b) to allow the BOP unlimited authority to place prisoners in any appropriate facility for incarceration, including those operated by the private sector. 16 Op. Off. Legal Counsel 65, 67 (1992). Thus, it became a common practice for the BOP to place a low-risk, nonviolent offender in a CCC, a halfway house, or some other form of community confinement for periods of time longer than six months regardless of the length of their sentence, instead of committing the offender to a federal prison, pursuant to the grant of authority in § 3624 ( c). This practice of CCC placement was considered routine, and was not seriously contested by any party. See United States v. Serpa, 251 F.Supp.2d 988, 990 (D.Mass.2003) ("These practices were entirely routine and were all but taken for granted by all participants: the BOP, the Probation Office, the U.S. Attorney's Office, the defense bar, and the judiciary.")

On December 13, 2002, however, the OLC changed its interpretation of § 3621(b) and determined, inter alia, that §3621(b) does not give the BOP general authority to place an offender in community confinement from the outset of his sentence or to transfer the offender from prison to community confinement at any time the BOP chooses during the course of the offender's sentence. Rather, under the new interpretation of §3621(b), the BOP was authorized only to consider CCC placement for the final ten percent of a prisoner's sentence, not to exceed six months as provided in 18 U.S.C. § 3624 ( c). The

BOP subsequently memorialized this new policy ("December 2002 policy").

The BOP December 2002 policy resulted in a stream of lawsuits in federal district courts throughout the country. Some courts upheld the lawfulness of the December 2002 policy while other courts found the policy to be invalid. "The grounds for challenging the policy have varied, and courts have been almost evenly divided in granting and denying relief." See Estes v. Federal Bureau of Prisons, 273 F.Supp.2d 1301, 1305 (S.D. Ala. 2003) (citations omitted).

In response to these varied rulings, the BOP promulgated a new set of CCC placement rules which became effective on February 14, 2005, and are codified at 28 U.S.C. §§ 570.20 & 570.21.[5]  Under the February 14, 2005 policy, the BOP simply

---

[5]  **§ 570.20 What is the purpose of this subpart?**

(a) This subpart provides the Bureau of Prisons' (Bureau) categorical exercise of discretion for designating inmates to community confinement. The Bureau designates inmates to community confinement only as part of pre-release custody and programming which will afford the prisoner a reasonable opportunity to adjust to and prepare for re-entry into the community.

(b) As discussed in this subpart, the term "community confinement" includes Community Corrections Centers (CCC) (also known as "halfway houses") and home confinement.

**§ 570.21 When will the Bureau designate inmates to community confinement?**

(a) The Bureau will designate inmates to community confinement only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months.

(b) We may exceed these time-frames only when specific Bureau programs allow greater periods of community confinement, as provided by separate statutory authority (for example, residential substance abuse treatment program 18 U.S.C. 3621(e)(2)(A)), or shock incarceration program (18 U.S.C. 4046(c)).

"explicitly recogniz[ed] its discretion under § 3621(d) to designate federal inmates to CCC's for all or part of their prison terms" and then proposed "to exercise its discretion categorically to limit inmates' community confinement to the last ten percent of the prison sentence being served, not to exceed six months." See Wiesel v. Menifee, 2005 WL 1036297 (S.D.N.Y. May 2, 2005) (citing 69 Fed.Reg. 51213 (August 18, 2004)). As a result, the February 14, 2005 policy, like its predecessor, effectively maintained the BOP policy of limiting CCC placements to the final ten percent of an inmate's sentence.

Petitioner challenges the validity of the February 2005 policy, primarily arguing that it violates the statutory requirements of 18 U.S.C. §3621 by removing from consideration the specific factors set forth therein, in particular, the recommendation of the sentencing court. In addition, petitioner contends that the BOP policy is in conflict with the statutory provisions of 18 U.S.C. §3621(b) which authorizes the BOP to transfer an inmate to a CCC at anytime during his prison term.

Addressing this issue, the undersigned finds no case law in this district addressing the validity of the February 2005 policy. Moreover, neither the Supreme Court nor the Eleventh Circuit Court of Appeals has decided this issue. However, the 2005 policy has been the subject of several district and appellate court opinions outside this circuit - - *albeit* with conflicting findings and conclusions. Petitioner relies on decisions from the Third and Eighth Circuit Courts which have invalidated the February 2005 policy on the ground that it disregards the factors set forth in § 3621(b). See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005) ("The regulations are invalid because the BOP may not

---

13

categorically remove its ability to consider the explicit factors set forth by Congress in § 3621 for making placement and transfer determinations."); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006) ("[T]he BOP regulations removed the opportunity for the BOP to exercise discretion for all inmates not serving the last ten percent of their sentences. . . .")

To the contrary, however, other courts have concluded that the February 2005 policy reasonably interprets § 3621 (b) and, therefore, is valid. See Lee v. United States, 2005 WL 2179796 (S.D. Ala. Sept. 6, 2006) (finding that the BOP has the authority to categorically exercise its discretion regarding CCC transfers and upholding the validity of the February 2005 rule); see also Turtle v. Francis, 2005 WL 3504410 (S.D. Tex. Dec. 21, 2005).

Addressing the validity of the February 2005 rule, the undersigned is guided by the two-step analysis for statutory interpretation established by the Supreme Court in Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778 (1984). Under this two-step analysis, the undersigned must first determine if Congress has spoken directly to the precise question at issue in such a way that the intent of Congress is clear and unambiguous. Chevron, 467 U.S. at 842-43. Where, as here, "the statute is silent or ambiguous with respect to the specific issue," the court must proceed to step two and determine whether the BOP's interpretation "is based on a permissible construction of the statute." Id. In making this determination, "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." Id. Under this second step, the agency's construction is entitled to heightened deference and "any ensuing regulation is binding on the courts unless procedurally defective, arbitrary or capricious in substance or manifestly contrary to the statute." United

States v. Mead Corp., 533 U.S. 218, 227 (2001) (citing Chevron, supra.)

Applying this analysis here, the undersigned finds that the BOP's interpretation of § 3621 (b) is not based on a reasonable construction of the statutory scheme and violates the expressed intent of Congress. This finding is consistent with the only three circuit court of appeals which have considered the issue, all of which have held that the BOP's February 2005 regulations are invalid. See Woodall v. Fed. Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005); Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006); Levine v. Apker, 455 F.3d 71 (2d Cir. 2006) ("The BOP is not empowered to implement selectively the instruction given by § 3621(b), by picking and choosing those factors that it deems most compelling."). Based on the well reasoned decisions of Woodall, Fults and Levine, the undersigned concludes that the February 2005 policy is invalid.

As recognized in Woodall, Fults and Levine, the inherent flaw with the BOP's February 2005 regulations is that they do not allow the BOP to consider all the factors listed in § 3621(b) which, pursuant to that statute, must be considered when the BOP initially designates an inmate's place of confinement and when the BOP transfers an inmate to a new facility. Significantly, the undersigned notes that the second, third and fourth factors set forth in § 3621(b) are specific to individual prisoners and, thus, cannot be reasonably considered utilizing a categorical approach. As petitioner notes here, the fourth factor, which considers the sentencing court's recommendation concerning the type of penal facility, was disregarded by the BOP in determining petitioner's release date to the to a CCC under a categorical approach. To do so would essentially constitute editing a statute which the BOP may not do. See Levine, 455 F.3d at 85 (The BOP may not adopt regulations that edit statutes they purport to interpret). As stated in Woodall:

15

> The regulations do not allow the BOP to consider the nature and circumstances of an inmates's offense, his or her history and pertinent characteristics, or most importantly, any statement by the sentencing court concerning a placement recommendation and the purposes for the sentence. And yet, according to the text and history of § 3621, these factors must be taken into account. The regulations are invalid because the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations.

Woodall, 432 F.2d at 244.

Accordingly, if this Court were to have jurisdiction over this petition, the undersigned would find that the BOP's February 2005 regulations are contrary to the clear intent of Congress in § 3621(b) and are invalid.[6]

---

[6]In so finding, the undersigned has rejected those decisions which approved the February 2005 policy by applying the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230, 121 S.Ct. 714 (2001). In Lopez, the Supreme Court upheld the BOP's discretionary decision to categorically exclude certain inmates, i.e., those convicted of offenses involving firearms, from eligibility for early release after successful completion of a drug treatment program under 18 U.S.C. § 3621(e)(2)(B). In upholding the BOP's policy, the Supreme Court reasoned "beyond instructing that the Bureau has discretion to reduce the period of imprisonment for a non-violent offender who successfully completes drug treatment, Congress has not identified any circumstance in which the Bureau either must grant the reduction , or is forbidden to do so." Lopez at 242. Therefore, the Supreme Court only decided whether the BOP reasonably filled the statutory gap. Id. Here, unlike in Lopez, the BOP's February 2005 regulations do not fill a statutory gap in § 3621(b), but rather ignore the plain language of § 3621(b) which requires consideration of the five factors discussed above.

## RECOMMENDATION

For all the foregoing reasons, the undersigned respectfully recommends:

(1) that Petitioner's Request for Relief Pursuant to 28 U.S.C. § 1361 be DENIED;

(2) that Petitioner's Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence be DENIED; and

(3) that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 be DISMISSED without prejudice to afford petitioner the opportunity to exhaust his administration remedies in accordance with BOP procedures.

The parties may serve and file written objections to this Report and Recommendation with the Honorable Jose E. Martinez, United States District Judge, within ten (10) days of receipt. See 28 U.S.C. §636(b)1)c); United States v. Warren, 687 F.2d 347 (11th Cir. 1982); cert. denied, 460 U.S. 1087 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140 (1985).

RESPECTFULLY SUBMITTED this 10th day of October, 2006 in Miami, Florida.

_____
Ted E. Bandstra
Chief United States Magistrate Judge

cc: Honorable Jose E. Martinez
    Counsel of record